No. 17-55208

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

JENNY LISETTE FLORES, et al.
Plaintiffs-Appellees,

v.

JEFFERSON B. SESSIONS III,
Attorney General of the United States, et al.
Defendants-Appellants.

ON APPEAL FROM A FINAL JUDGMENT OF THE
UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA
D.C. No. 2:85-cv-04544-DMG-AGR

# REPLY IN SUPPORT OF EMERGENCY MOTION TO STAY DISTRICT COURT ORDER

CHAD A. READLER
Acting Assistant Attorney General,
Civil Division

AUGUST E. FLENTJE
Special Counsel to the Assistant
Attorney General

WILLIAM C. PEACHEY
Director

SARAH B. FABIAN
Senior Litigation Counsel

VINITA B. ANDRAPALLIYAL
Trial Attorney
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 532-4824
Fax: (202) 305-7000
Email: Vinita.b.andrapalliyal@usdoj.gov

*Attorneys for Defendants-Appellants*

## INTRODUCTION AND SUMMARY

Defendants-Appellants (hereinafter "Defendants" or "the Government") hereby reply to Plaintiffs-Appellees' opposition to Defendants-Appellants' emergency motion for a stay pending appeal of the district court's January 20, 2017 Order.

First, Plaintiffs-Appellees obscure the real issue before this Court by repeatedly asserting constitutional arguments in support of their position. *See* ECF No. 3-2, at 9, 17. The *Flores* Settlement Agreement that Plaintiffs-Appellees moved to enforce in the proceedings below is a consent decree that should be interpreted as a contract, *Flores v. Lynch*, 828 F.3d 898, 905 (9th Cir. 2016), and the legal question to be resolved is whether subsequent statutes have superseded the Agreement's bond hearing requirements with respect to unaccompanied alien children ("UACs"). *See* ECF No. 3-2, at 16; Homeland Security Act, Pub. L. No. 107-296, 116 Stat. 2135 ("HSA"); William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457 ("TVPRA").[1] Simply put, there is no constitutional issue to be decided by this Court.

---

[1] Therefore, to the extent Plaintiffs-Appellees take the position that there is a constitutional requirement for a hearing, their available remedy is not to sue to enforce the *Flores* Agreement but rather to bring a case on behalf of an individual UAC and allow a district court to engage in the due process analysis as to whether

Second, Plaintiffs-Appellees apparently fail to understand that Defendants-Appellants are not appealing the district court's denial of their motion for a stay pending appeal authorization but are rather moving for a stay in this Court under Rule 8 of the Federal Rules of Appellate Procedure, which does not mandate that the same arguments and evidence be presented in such a motion before both the district court and this Court. *See* Fed R. App. P. 8(a); *see also, e.g.*, *Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*, 512 F.3d 1112, 1121 (9th Cir. 2008) (analyzing a motion to stay pending appeal without reference to the district court's analysis in denying the stay motion presented in that court). Plaintiffs-Apellees cite inapposite and extra-circuit law for the propositions that the instant motion should be decided under an abuse of discretion standard and that the record need be frozen at the time of the district court's denial of Defendants-Appellants' stay motion.

Further, the cited cases are fundamentally distinguishable from the facts here. In those cases, intervening evidence or a shift in the law casts doubt on the district court's order on the merits. Here, however, Defendants-Appellants have simply submitted declarations in support of the irreparable harm multiple agencies face in trying to comply with the district court's order pending appeal. *See* ECF No. 2-4, 2-5. *Ruiz v. Estelle*, 650 F.2d 555, 567 (5th Cir. 1981) (denying stay of

---

ORR procedures accord with due process. *See Matthews v. Eldridge*, 424 U.S. 319 (1976). Indeed, multiple UACs have done so. *E.g.*, *D.B. v. Cardall*, 1:15-cv-00745 (E.D. Va.); *Ramirez v. Burwell*, 16-cv-1511 (C.D. Cal.).

appeal where multiple areas of law encompassed by the district court order at issue had shifted since the district court issued its injunction, and finding those issues should be first considered by the district court); *Chemical Weapons Working Group v. Dep't of the Army*, 101 F.3d 1360, 1362 (10th Cir. 1996) (denying stay of appeal "predominantly [sought] on the basis of new evidence concerning events which occurred after the district court denied the motion for a preliminary injunction"); *Thompson v. Calderon*, 122 F.3d 28, 29 (9th Cir. 1997) (denying request to recall the mandate and for a stay of execution in a criminal case on the basis of "newly discovered evidence" purportedly casting doubt on the validity of the conviction). By contrast, Defendants-Appellants' declarations simply demonstrate that a stay is warranted so that multiple federal agencies do not have to expend significant resources and clog the already overburdened immigration courts with the creation of a new immigration judge bond hearing process for a large class of people before this Court can decide whether the district court erred as a matter of law in ordering said procedures.[2]

---

[2] Defendants-Appellants were working on finalizing their declarations to file in district court but were unable to submit them before the district court ruled on their stay motion.

Regarding the time between the district court's order denying Defendants-Appellants' motion for a stay and the Defendants-Appellants' notice of appeal and motion for a stay before this Court, any determination whether Defendants-Appellants may appeal must be made by the Solicitor General. *See* 28 C.F.R. § 0.20(b); *See also* United States Attorney's Manual § 2-2.121 ("All appeals to the

Finally, Plaintiffs-Appellees' arguments regarding the irreparability of harm, the balance of the hardships, and the public interest are unavailing. Plaintiffs-Appellees spend much of their opposition brief arguing that refusing to stay the district court's order would result in fewer unaccompanied minors being "detained" and presenting the economic and social benefits from the release of UACs that would follow. However, when confronted with the statutory reality that HHS cannot release a UAC unless a suitable custodian has been found, 6 U.S.C.§ 279(b)(2); 8 U.S.C. § 1232(c)(A), regardless of the outcome of a bond hearing in front of an immigration judge,[3] Plaintiffs-Appellees argue that "denying detained children due process . . . itself constitutes irreparable injury regardless of whether a

lower appellate courts in cases handled by divisions of the Department and United States Attorneys, and all petitions for certiorari and direct appeals to the Supreme Court must be authorized by the Solicitor General."). In deciding whether to authorize appeal in a case such as this one, the Solicitor General seeks input from and consults with multiple components of the Department of Justice (DOJ), and with the interested components of other federal departments. Thus, determining whether to appeal the Court's Order required coordination among and consultation with multiple federal offices and agencies. That process necessarily requires careful consideration and takes time.

[3] A bond simply exists to ameliorate an alien's flight risk, and ensure the alien's future appearance at a removal hearing. *See Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006) ("In general, an Immigration Judge must consider whether an alien who seeks a change in custody status is a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk.").

hearing results in release." ECF 3-2, at 17. However, again, any constitutional due process rights related to the admission of UACs are not at issue.[4] Rather, the issues

[4] Indeed, if they were, it is doubtful that such rights may be meaningfully asserted here. It is well-settled that "aliens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country." *United States v. Verdugo–Urquidez*, 494 U.S. 259, 271 (1990). Aliens identified at the border who have not had any contact with the United States—even if they are subsequently paroled into the territorial United States during the resolution of their claims for admission—are not entitled to any process other than that provided by statute. *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1088 (9th Cir. 2011); *Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application"). For such aliens, "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953); *see Alvarez-Garcia*, 378 F.3d at 1097–98; *see also Angov v. Lynch*, 788 F.3d. 893, 898 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 896 (2016); *Castro v. United States*, 835 F.3d 422 (3d Cir. 2016); *United States v. Peralta-Sanchez*, No. 14-50393, 2017 WL 510454, at *4 n.8 (9th Cir. Feb. 7, 2017).

Longstanding Supreme Court precedent distinguishes among aliens who have been lawfully admitted, those who are physically present in the United States (albeit illegally) for a meaningful period of time, and those who have never been admitted and have yet to form a connection to the country, with the latter lacking constitutional procedural due process rights. *See Verdugo-Urquidez*, 494 U.S. at 270–71 (collecting cases); *Plasencia*, 459 U.S. 21, 32 (1982); *Chew v. Colding*, 344 U.S. 590, 596 n.5 (1953); *cf. Johnson v. Eisentrager*, 339 U.S. 763, 770 (1950) (describing sliding scale and distinguishing between unlawful presence, lawful presence, and lawful presence accompanied by other ties to the United States like "preliminary declaration of intention to become a citizen"). That is because "an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application." *Plasencia*, 459 U.S. at 32. This lack of entitlement to extra-statutory procedure also applies to claims relating to detention because, as the Ninth Circuit has explained, "[a]n alien's freedom from detention is only a variation on the alien's claim of an interest in entering the country." *See Clark v. Smith*, 967 F.2d 1329, 1331 (9th Cir. 1992).

are (1) whether the HSA and TVPRA's comprehensive statutory scheme, which specifically provides for the care, custody, and release of UACs, obviates Paragraph 24A of the *Flores* Agreement's bond hearing requirements with respect to UACs; and (2) the extent to which the district court's order imposes irreparable burdens on Defendants without meaningfully changing the custody status of UACs. In fact, failure to grant a stay of the district court's order may cause harm to other, non-UAC aliens who have proceedings in immigration courts by clogging the courts with new bond hearings, spreading the resources of the immigration courts even thinner and resulting in delay for those litigants.

The district court's order misinterprets the nature of the TVPRA; fundamentally alters the status quo more than eight years after the TVPRA's passage; and requires multiple federal agencies to create a new bond hearing process for UACs out of whole cloth, a procedure that is ultimately of little practical consequence for UACs. Therefore, a stay of the order is warranted pending the Court's consideration of Defendants-Appellants' appeal.

## CONCLUSION

For the foregoing reasons, the Court should grant a stay pending appeal of the Order entered on January 20, 2017.

//

Dated: February 22, 2017 Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

AUGUST E. FLENTJE
Special Counsel to the Assistant Attorney General

WILLIAM C. PEACHEY
Director

COLIN KISOR
Deputy Director

WILLIAM C. SILVIS
Assistant Director

SARAH B. FABIAN
Senior Litigation Counsel

By: /s/ Vinita B. Andrapalliyal
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 598-8085
Facsimile: (202) 305-7000
Email: Vinita.b.andrapalliyal@usdoj.gov

*Attorneys for Defendants-Appellants*

## CERTIFICATE OF SERVICE

I certify that on February 22, 2017, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

/s/ Vinita B. Andrapalliyal
VINITA B. ANDRAPALLIYAL